UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYANT T. PRATT, | No. C 13-4557 SI (pr) |
| Plaintiff, | **ORDER OF DISMISSAL WITH LEAVE TO AMEND** |
| v. | |
| B. HEDRICK; et al., | |
| Defendants. | |

## INTRODUCTION

Ryant T. Pratt, an inmate incarcerated at Salinas Valley State Prison, filed a *pro se* civil rights action under 42 U.S.C. § 1983. His complaint is now before the court for review under 28 U.S.C. § 1915A.

## BACKGROUND

The complaint alleges the following:

Pratt received an "exaggerated" disciplinary charge for a June 18, 2013 "incident" that he characterized as "horseplaying" and prison officials characterized as "battery on [an] inmate." Docket # 1 at 3. He was issued a CDCR-115 rule violation report and put in administrative segregation pending a hearing on the charge of "battery on [an] inmate." *Id.* The charge against him later was upgraded to battery with "serious bodily injury" based on a written diagnosis or statement made by Dr. Adams on June 27, 2013. *Id.*

A disciplinary hearing was held on July 19, 2013, during which lieutenant R. Martinez made an unspecified threat against Pratt because he did not wish to sign a waiver form. He was found guilty of battery on an inmate with serious bodily injury and was placed on loss-of-privileges status for 30 days.

The inmate who reportedly sustained serious bodily injury due to the incident with Pratt told lieutenant Martinez that he was never seen by Dr. Adams or battered by Pratt. Martinez said he "did not care" and the inmate could file an inmate appeal, which the inmate did. (It is not clear whether this exchange occurred at the disciplinary hearing or at a later date.)

On August 10, 2013, correctional officer K. Collier confiscated Pratt's television because of his loss-of-privileges status. When the loss-of-privileges period ended on August 18, 2013, Pratt's television was not returned to him because staff members could not find it.

On August 19, 2013, Pratt received another disciplinary charge. This CDCR-115 rule violation report charged him with making a "threat of force and violence against staff" based on Collier's report that Pratt had threatened Collier on August 10, 2013. *Id.* at 4. He was found guilty of this offense on September 14, 2013, and received an unspecified penalty. *See id.* at 6.

On September 10, 2013, C/O Medina interviewed Pratt and the alleged victim about Pratt's inmate appeal regarding the disciplinary charge for the June 18, 2013 incident. Medina did not fully document Pratt's statement after conducting the interviews.

On September 12, 2013, Pratt appeared before the institutional classification committee for a program review, and again explained that the evidence against him had been fabricated and that Collier had been harassing him.

Pratt contends that he was punished excessively, and was retaliated against by staff for a 1999 incident involving staff. *Id.* at 6.

**DISCUSSION**

A.  Review of Complaint

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. See

2

28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* at § 1915A(b). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

The complaint raises claims about the disciplinary proceedings, the administrative appeals, the television, and retaliation. There are problems with all of the claims that plaintiff must attempt to cure in an amended complaint.

1. Challenge To Disciplinary Proceedings

Prisoners retain their Fourteenth Amendment right to due process subject to the restrictions imposed by the nature of the penal system. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Although prison disciplinary proceedings need not afford a prisoner the full panoply of rights due to a defendant in a criminal proceeding, where serious rules violations are alleged and the sanctions to be applied are severe enough, the Due Process Clause requires certain minimum procedural protections. *See id.* at 556-57, 571-72 n.19.

Interests that are procedurally protected by the Due Process Clause may arise from two sources--the Due Process Clause itself and laws of the states. *See Meachum v. Fano*, 427 U.S. 215, 223-27 (1976). In the prison context, these interests are generally ones pertaining to liberty. Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they are authorized by state law. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citing *Vitek v. Jones*, 445 U.S. 480, 493 (1980) (transfer to mental hospital), and *Washington v. Harper*, 494 U.S. 210, 221-22 (1990) (involuntary administration of psychotropic drugs)). Deprivations that are less severe or more

closely related to the expected terms of confinement may also amount to deprivations of a procedurally protected liberty interest, provided that the liberty in question is one of "real substance." *See Sandin*, 515 U.S. at 477-87.[1] An interest of "real substance" will generally be limited to freedom from restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or "will inevitably affect the duration of [a] sentence." *Id.* at 484, 487.  In determining whether a restraint is an "atypical and significant hardship," three guideposts have been identified to frame the inquiry: whether the challenged condition mirrored the conditions imposed on inmates in administrative segregation and protective custody; the duration of the condition and degree of restraint imposed; and whether the discipline will invariably affect the duration of the prisoner's sentence. *See Chappell v. Mandeville*, 706 F.3d 1052, 1065 (9th Cir. 2013).

Pratt's complaint fails to state a claim for a due process violation based on the disciplinary proceedings for either the charge of battery on an inmate on June 18, 2013 or for the charge of threatening staff on August 10, 2013 because Pratt does not adequately identify the punishment imposed for each of the charges.  The absence of information about the punishment prevents the court from determining that there was a deprivation of any constitutionally protected liberty or property interest.  The only discipline Pratt identifies is the 30 days loss-of-privileges status on the June 18, 2013 battery offense, but that alone does not amount to an atypical and significant hardship under *Sandin* so as to trigger any need for

---

[1] There is some uncertainty as to whether, in addition to a liberty interest of real substance, there also must be state statutes or regulations that narrowly restrict the power of prison officials to impose the deprivation in order for a procedurally protected liberty interest to be found. *Compare Sandin*, 515 U.S. at 483-84 ("we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause"), *and id.* at 486 ("We hold that Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest") *with Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) ("After *Sandin*, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life"). Almost twenty years after *Sandin* was decided, the uncertainty continues. *Compare Chappell v. Mandeville*, 706 F.3d 1052, 1055, 1063-64 (9th Cir. 2013) (focus should be only on the atypical and significant hardship test) *with id.* at 1065-66 (concurring opinion) (majority improperly reads *Sandin* to find a state-created liberty interest based only on the existence of an atypical and significant hardship and without the need for the state to actually create a liberty interest).

4

procedural protections under the federal constitution. In his amended complaint, Pratt must fully describe the punishment imposed for the June 18 and the August 19 offenses so that the court can figure out whether any process was due.

The other problem is that Pratt did not allege the particular procedural protections he was not provided in the disciplinary proceedings for each charge. If the discipline imposed will inevitably affect the duration of his sentence or imposes an atypical and significant hardship, the procedural protections required in a prison disciplinary proceeding include written notice, time to prepare for the hearing, a written statement of decision, allowance of witnesses and documentary evidence when not unduly hazardous, and aid to the accused where the inmate is illiterate or the issues are complex. *Wolff*, 418 U.S. at 564-67. There also must be some evidence to support the disciplinary decision, *see Superintendent v. Hill*, 472 U.S. 445, 454 (1985), and the information that forms the basis for prison disciplinary actions must have some indicia of reliability. *See Cato v. Rushen*, 824 F.2d 703, 704-05 (9th Cir. 1987). In his amended complaint, Pratt must identify each procedural protection he did not receive in connection with each of the disciplinary proceedings against him.

Pratt also alleges that someone made a false accusation against him. False charges alone are not actionable under § 1983 because falsely accusing a person of misconduct does not violate a right secured by the Constitution or laws of the United States. For a false accusation to be potentially actionable, the false charge must implicate some constitutional right, such as the Fourteenth Amendment's right to due process or the First Amendment-based right to be free from retaliation. An allegation of a false charge that results in discipline that is not severe enough to amount to a deprivation of a protected liberty interest under *Sandin* – that is, by imposing an atypical and significant hardship or by inevitably affecting the duration of confinement – does not state a claim under § 1983. *See Smith v. Mensinger*, 293 F.3d 641, 653-54 (3d Cir. 2002) (no § 1983 claim was stated for allegedly false charges because the disciplinary confinement imposed was too short to amount to an atypical and significant hardship under *Sandin*). Even if the false charge does result in discipline that amounts to the deprivation of a protected liberty interest under *Sandin*, a § 1983 claim is not stated if the inmate

5

is afforded the procedural protections required by federal law at the disciplinary hearing. *See Smith*, 293 F.3d at 654; *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989); *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986); *Hanrahan v. Lane*, 747 F.2d 1137, 1140-41 (7th Cir. 1984).

In his amended complaint, Pratt must allege his claims for the two disciplinary charges separately. He should have one section describing the discipline that was imposed for the June 18 battery charge, and explaining what procedural protections were not provided in that disciplinary proceeding. He should have a separate section describing the discipline that was imposed for the August 10 threatening staff charge, and explaining what procedural protections were not provided in that disciplinary proceeding. For each proceeding, if he wants to claim that the charges were false, he must also allege that in his amended complaint and link a defendant to such a claim.

2.   Administrative Appeals

The mishandling or failure to grant an inmate's appeal in the prison administrative appeal system does not amount to a due process violation. There is no federal constitutional right to a prison administrative appeal or grievance system for California inmates. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) (prison grievance procedure is procedural right that does not give rise to protected liberty interest requiring procedural protections of Due Process Clause); *Smith v. Noonan*, 992 F.2d 987, 989 (9th Cir. 1993). Prison officials are not liable for a due process violation for simply failing to process an appeal properly or failing to find in Pratt's favor. The due process claim based on the mishandling or rejection of the inmate appeals is dismissed.

3.   Television Set

Allegations that a plaintiff has been deprived of his property negligently or intentionally without a pre-deprivation hearing do not state a due process claim under § 1983 if the

6

1 deprivation was random and unauthorized, *see Parratt v. Taylor*, 451 U.S. 527, 535-44 (1981) (state employee negligently lost prisoner's hobby kit), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 330-31 (1986); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (intentional destruction of inmate's property), because California provides an adequate state post-deprivation remedy, *see Zinermon v. Burch*, 494 U.S. 113, 128-29 (1990) (where state cannot foresee and therefore provide meaningful hearing prior to deprivation, statutory provision for post-deprivation hearing or common law tort remedy for erroneous deprivation satisfies due process). The complaint's allegations that Pratt's television set could not be found nine days after C/O Collier confiscated it appear to show a random and unauthorized property deprivation that is not actionable under § 1983. If Pratt wants to pursue a state law claim about the television set, he must allege such a claim in his amended complaint, must allege that the court has supplemental jurisdiction over such a state law claim, and must link one or more defendants to the claim. The complaint does not adequately link defendant Collier to the claim because, although it alleges that Collier confiscated the television when plaintiff was put on loss-of-privileges status, the complaint does not allege that Collier was the person who caused the television set to be lost or stolen. If the federal court otherwise has no jurisdiction over the case, the claim for random and unauthorized deprivations of property must be pursued in state court.

### 4. Retaliation

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

Pratt's conclusory allegation that "administrative staff officers" retaliated against him in 2013 for an unspecified 1999 incident involving staff fails to state a claim for a retaliation. *See* Docket # 1 at 6. If Pratt wishes to pursue this claim, he needs to identify the particular

7

1 defendant(s) for this claim and allege facts showing what each person did or failed to do that
2 amounted to retaliation. He also needs to explain what the 1999 incident was that allegedly
3 prompted the retaliation, and explain what occurred in 2013 (e.g., acts or words) that makes him
4 think the defendant(s) knew or and were retaliating for the 1999 incident.

B.     Motion To Join Other Plaintiffs

Pratt has moved to add two other prisoners to this action as plaintiffs, or to consolidate the three cases into a single case. The basis for the motion is that "one or more acts or occurrences by . . . C/O J. Collier transpired simultaneously." Docket # 4 at 1.

"A district court possesses inherent power over the administration of its business." *Spurlock v. FBI*, 69 F.3d 1010, 1016 (9th Cir. 1995). This power includes the authority to promulgate and enforce rules for the management of litigation and its docket. *Id.* (citations omitted). Basic case management principles of delay reduction and avoidance of confusion call for *pro se* prisoner-plaintiffs to prosecute their claims separately. Incarcerated prisoners, especially those in administrative segregation, cannot readily meet to discuss and prosecute an action. Prisoners are subject to transfers, and even if Pratt can talk to his two proposed co-plaintiffs today, there is no guarantee that they will continue to be able to talk to each other for the duration of this litigation: one or more of them may be moved to a different housing unit, a different prison, or possibly released from custody. Under the circumstances, their physical separation will inevitably and significantly impact the litigation of this action. As *pro se* litigants, none of the plaintiffs would have the authority to represent the others. *Russell v. United States*, 308 F.2d 78, 79 (9th Cir. 1962) ("[A] litigant appearing in propria persona has no authority to represent anyone other than himself."). This action will stall as any document to be filed is shuttled back and forth between the multiple plaintiffs until all are comfortable with signing it. The glacial pace of prisoners' written communications with each other will result in extensive delays at each point in the litigation where they are required to file anything with the court. One alternative is to permit each of the three proposed plaintiffs to file separate documents, but this approach essentially results in three actions within an action, which has

8

almost no benefits to match the substantial confusion caused by it.  For these reasons, the motion for permissive joinder is DENIED.  (Docket # 4.)

## CONCLUSION

For the foregoing reasons, the complaint is dismissed with leave to amend.  Plaintiff must file an amended complaint no later than **February 28, 2014**, and must include the caption and civil case number used in this order and the words AMENDED COMPLAINT on the first page. Plaintiff is cautioned that his amended complaint must be a complete statement of his claims. *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) ("For claims dismissed with prejudice and without leave to amend, we will not require that they be repled in a subsequent amended complaint to preserve them for appeal. But for any claims voluntarily dismissed, we will consider those claims to be waived if not repled.")  Failure to file the amended complaint by the deadline will result in the dismissal of the action.

IT IS SO ORDERED.

Dated: January 24, 2014

_____
SUSAN ILLSTON
United States District Judge